# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# SAN ANTONIO DIVISION

| | |
|---|---|
| DAMON S. BONNEAU, JR., *Plaintiff* | § § § |
| -vs- | § § SA-19-CV-01471-XR § § |
| RICHARD CUELLAR, *Defendant* | § § § § § § § |

## ORDER ON MOTION FOR SUMMARY JUDGMENT

On this date, the Court considered Defendant's Motion for Summary Judgment. ECF No. 45. No response has been filed. After careful consideration, Defendant's motion for summary judgment is **GRANTED**.

## BACKGROUND[1]

This case arises from two separate incidents involving Plaintiff Damon Bonneau and Defendant San Antonio Police Officer Richard Cuellar. Plaintiff asserts claims pursuant to 42 U.S.C. § 1983 the Fourth, Fifth, and Fourteenth Amendments, as well as a state tort law claim of intentional infliction of emotional distress. ECF No. 16. Specifically, Plaintiff brings claims of (1) excessive force in the placing of handcuffs as to the first incident; (2) false arrest as to both incidents; (3) racial discrimination in violation of the Equal Protection Clause as to both incidents; (4) intentional infliction of emotional distress as to both incidents; and (5) filing false reports as to both incidents. *Id.*

---

[1] These facts are undisputed, unless otherwise noted.

## I. First Incident

On July 3, 2019, Defendant was dispatched to a residence located at 5102 St. Leonard, San Antonio, TX 78228, and found Plaintiff sitting on the curb across the street. ECF No. 45-2, at 1. Defendant found Plaintiff's wife, Margaret Bonneau, and her daughter, Amaris, locked in a vehicle. *Id.* Margaret told Defendant that she and her husband had a dispute, and her husband's erratic behavior caused her and Amaris to flee to the vehicle, where Amaris called 911. *Id.* Amaris told the dispatcher Plaintiff "was off his meds, was crazy, and possibly has a gun." *Id.* Plaintiff was arrested for disorderly conduct under Texas Penal Code section 42.01(a)(1). Plaintiff was handcuffed, *id.*, and he alleges the cuffs were too tight and resulted in injury to his person, ECF No. 16.

## II. Second Incident

On September 27, 2019, Defendant was dispatched to 5103 St. Leonard, San Antonio, TX 78228 for a disturbance involving Plaintiff. ECF No. 45-2, at 2. Lilianna Bonneau, Plaintiff's daughter, informed Defendant that Plaintiff had come over after arguing with her mother at a different location and started an argument with Lilianna and Amaris over cell phones that Plaintiff believed Margaret was using to cheat on him. *Id.* During the argument, Lilianna's dog ran out of the house. *Id.* Plaintiff picked up the dog, placed it in his car, and drove off. *Id.* Lilianna told Defendant that she owned and cared for the dog, and she had not given Plaintiff consent to take the dog. *Id.* at 3.

By the time Defendant arrived at 5103 St. Leonard, Plaintiff had left the residence. *Id.* Defendant eventually saw Plaintiff drive by the area and pulled him over. *Id.* He located the dog in the back seat of the vehicle, and Lilianna, who was transported by another officer to the scene,

confirmed that it was her dog and that she had not given her father permission to take the dog. *Id.* Plaintiff was arrested and booked for theft under Texas Penal Code section 31.03. *Id.*

## DISCUSSION

### I. Summary Judgment Standard

The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56. To establish that there is no genuine issue as to any material fact, the movant must either submit evidence that negates the existence of some material element of the nonmovant's claim or defense, or if the crucial issue is one for which the nonmovant will bear the burden of proof at trial, merely point out that the evidence in the record is insufficient to support an essential element of the nonmovant's claim or defense. *Little v. Liquid Air Corp.*, 952 F.2d 841, 847 (5th Cir. 1992), *on reh'g en banc*, 37 F.3d 1069 (5th Cir. 1994) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

Once the movant carries their initial burden, the burden shifts to the nonmovant to show that summary judgment is inappropriate. *Fields v. City of South Houston*, 922 F.2d 1183, 1187 (5th Cir. 1991). "Unsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment," *Brown v. City of Houston*, 337 F.3d 539, 541 (5th Cir. 2003), and neither will "only a scintilla of evidence" meet the nonmovant's burden. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). Rather, the nonmovant must "set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998). The Court will not assume "in the absence of any proof . . . that the nonmoving party could or would prove the necessary facts" and will grant summary judgment

"in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." *Little*, 37 F.3d at 1075.

For the Court to conclude that there are no genuine issues of material fact, the Court must be satisfied that no reasonable trier of fact could have found for the nonmovant, or, in other words, that the evidence favoring the nonmovant is insufficient to enable a reasonable jury to return a verdict for the nonmovant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In making this determination, the Court should review all the evidence in the record, giving credence to the evidence favoring the nonmovant as well as the "evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that evidence comes from disinterested witnesses." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000). The Court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment, *id.* at 150, and must review all facts in the light most favorable to the nonmoving party. *First Colony Life Ins. Co. v. Sanford*, 555 F.3d 177, 181 (5th Cir. 2009).

## II.     Qualified Immunity

Defendant has pled the affirmative defense of qualified immunity with respect to Plaintiff's claims brought pursuant to 42 U.S.C. § 1983. ECF No. 18, at 4. Defendant contends that, at all times relevant to the incidents involving Plaintiff, he was a licensed police officer acting within the course and scope of his employment with the San Antonio Police Department and within his discretionary authority. ECF No. 45, at 2. Defendant asserts that he is entitled to qualified immunity because he did not violate Plaintiff's constitutional rights, or in the alternative, his actions were objectively reasonable. *Id.*

"The doctrine of qualified immunity shields officials from civil liability so long as their conduct 'does not violate clearly established . . . constitutional rights of which a reasonable

person would have known.'" *Hernandez v. Mesa*, 137 S. Ct. 2003, 2007 (2017) (quoting *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (per curiam)). "Qualified immunity shields from liability all but the plainly incompetent or those who knowingly violate the law. Accordingly, qualified immunity represents the norm, and courts should deny a defendant immunity only in rare circumstances." *Angulo v. Brown*, 978 F.3d 942, 948–49 (5th Cir. 2020) (internal quotations omitted) (quoting *Romero v. City of Grapevine*, 888 F.3d 170, 176 (5th Cir. 2018)). When qualified immunity is asserted by a law enforcement officer, the "dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* To overcome an official's claim of qualified immunity, the claimant must be able to prove "facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (internal quotation omitted).

**III.    Analysis**

To state a claim under § 1983, a plaintiff must allege a violation of rights secured by the Constitution and laws of the United States and further, must show that a person acting under color of state law committed the alleged deprivation. *West v. Atkins*, 487 U.S. 42, 48 (1988). "Claims under § 1983 may be brought against persons in their individual or official capacity, or against a governmental entity." *Goodman v. Harris County*, 571 F.3d 388, 395 (5th Cir. 2009). There can be no § 1983 liability unless the plaintiff has suffered a constitutional violation at the hands of a state actor. *Doe ex rel. Magee v. Covington Cnty. Sch. Dist.*, 675 F.3d 849, 867 (5th Cir. 2012) (en banc).

### A. Plaintiff's excessive force claim fails because there is no evidence that he suffered more than de minimis injuries.

Plaintiff first brings a claim of excessive force against Defendant. A plaintiff alleging a § 1983 claim for the use of excessive force under the Fourth Amendment must establish: "(1) [an] injury (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." *Ratliff v. Aransas County*, 948 F.3d 281, 287 (5th Cir. 2020) (quoting *Freeman v. Gore*, 483 F.3d 404, 416 (5th Cir. 2007)) (alteration in original). The injury must be more than a de minimis injury and evaluated in the context in which the force was deployed. *Glenn v. City of Tyler*, 242 F.3d 307, 314 (5th Cir. 2001). Minor, incidental injuries that occur in connection with the use of handcuffs to effectuate an arrest do not give rise to a constitutional claim for excessive force. *Id.*; *Freeman*, 483 F.3d at 417. Where there is evidence that the alleged conduct was motivated by malice, though, the injury may rise to the level of a constitutional violation. *Glenn*, 242 F.3d at 314.

Plaintiff alleges that Defendant subjected him to excessive force by failing to double-lock the handcuffs during the July 3, 2019 incident, causing permanent injury to Plaintiff. ECF. No 16, at 2. Plaintiff testified that:

> Officer Cuellar did not double-lock the cuffs. He put me in the back of the patrol car. The cuffs tightened down. I explained to Officer Cuellar that he did not double up the cuffs and they had tightened down, and I had patiently been waiting for him to return to the vehicle to tell him that he did not double-lock the cuffs and the cuffs had tightened down and that I had lost circulation in my hands and fingers.

Bonneau Dep. 99:17–100:7. Plaintiff further testified that Defendant did not originally put the handcuffs on too tightly, but that the handcuffs tightened after Plaintiff was placed in the back of the patrol car. *Id.* at 100:10–23. The University Health System records show that in his examination at the city detention center, Plaintiff complained of tingling of his fingers with aching and stabbing to his bilateral wrists, and his pain level was a 5 out of 10. ECF No. 45-5, at

6

9. The records further show that Nurse Lois Peterson assessed Plaintiff, and her office note states:

> C/o tingling bilateral wrists. Slight indentations noted from handcuffs. Both hands warm to touch, cap refill < 3 seconds, pulses +. strong. Color-m not discolored. Advised patient to notify nursing if there is a change in status or returning/increasing medical problem. Patient verbalized understanding. Declines pain medication.

*Id.* at 10.

Plaintiff later sought treatment for numbness in his wrists in June 2020. ECF No. 45-5, at 8. The San Antonio Military Medical Center report indicates that Plaintiff was not subject to "recent trauma" and that the "[s]oft tissues are radiographically unremarkable." *Id.* The report does indicate "[m]ild radiocarpal and tirscaphe the degenerative changes," with an overall impression of "no acute osseous findings" and "[m]ild osteoarthrosis." *Id.* The report does not indicate the source of these conditions. *See id.*

Defendant's conduct on July 3, 2019 did not rise to the level of excessive force. First, the record only establishes that Plaintiff received de minimis injuries from Defendant's alleged failure to double-lock the handcuffs. The records from Plaintiff's initial visit to the University Health System after his arrest showed no discoloration, and he declined pain medication. No significant injuries were apparent to medical personnel at that time. Plaintiff's later visit to the San Antonio Military Medical Center did not demonstrate anything more than "mild" conditions or changes to his wrists and did not establish that these conditions arose because of being handcuffed.

Additionally, there is no evidence that Defendant's failure to double-lock the handcuffs was motivated by malice. Plaintiff testified that Defendant did not originally place the handcuffs on too tightly, but that they tightened after Plaintiff was placed in the patrol car without the cuffs being double-locked. After Plaintiff complained, Defendant did double-lock the handcuffs, but in

7

their too-tight position. However, there is no evidence that Defendant's actions were motivated by malice. Plaintiff does not provide evidence that Defendant made any remarks in connection with the July 3, 2019 arrest or that he failed to correct the cuffs tightness because of any personal animus towards Plaintiff.

Because Plaintiff suffered only de minimis injuries in connection with the handcuffing and has not presented evidence of malice, Plaintiff has failed to demonstrate a violation of his constitutional rights. Therefore, Defendant is entitled to qualified immunity, and the Court grants summary judgment as to Plaintiff's excessive force claim. *See Glenn*, 242 F.3d at 314.

### B. Plaintiff's false arrest claim fails because Defendant had probable cause in both incidents to make an arrest.

Plaintiff asserts that he was willfully detained without legal authority or justification during both incidents on July 3, 2019, and September 27, 2019. ECF No. 16, at 6. Section 1983 provides relief for those who are subjected to an unreasonable seizure under color of law. "An arrest or detention may be unlawful if it is accomplished without due process of law as required by the Constitution." *Duckett v. City of Cedar Park*, 950 F.2d 272, 278 (5th Cir. 1992). Thus, police officers are "required under the Fourth Amendment to make a determination of probable cause before any significant pretrial restraint of liberty." *Id.* "Probable cause exists 'when the totality of the facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense.'" *Haggerty v. Tex. S. Univ.*, 391 F.3d 653, 655–56 (5th Cir. 2004) (quoting *Glenn v. City of Tyler*, 242 F.3d 307, 313 (5th Cir. 2001)). "If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender." *Lockett v. New Orleans City*, 607 F.3d 992, 998 (5th Cir. 2010) (quoting *Atwater v. City of Lago Vista*, 532 U.S.

318, 354 (2001)). To overcome qualified immunity in this context, "[t]here must not even arguably be probable cause for the . . . arrest . . . ." *Brown v. Lyford*, 243 F.3d 185, 190 (5th Cir. 2001) (quoting *Hart v. O'Brien*, 127 F.3d 424, 444 (5th Cir. 1997)).

The record establishes that Defendant had probable cause to arrest Plaintiff in both instances. As to the first incident on July 3, 2019, Defendant received a dispatch to 5102 St. Leonard after Amaris reported "her father was acting crazy, had been off his medications for several weeks, and may have a gun." ECF No. 45-2, at 1; *see also* ECF No. 45-3, at 3. When Defendant arrived at the scene, he found Margaret and Amaris locked in a vehicle, crying and visibly upset. ECF No. 45-2, at 1. Margaret told Defendant that Plaintiff was in a rage and upset, that she and Amaris had gone to their rental property at 5102 St. Leonard to get away from him. *Id.* However, Plaintiff arrived soon after and began banging on the windows. *Id.* Margaret and Amaris eventually got into the locked vehicle because of Plaintiff's behavior. *Id.* After his conversation with Margaret, Defendant approached Plaintiff and attempted to speak with him. *Id.* at 2. Plaintiff "became uncooperative and confrontational," refused to provide Defendant a permit for the gun he was carrying, and demanded that Margaret and Amaris be arrested. *Id.* Plaintiff was subsequently arrested for disorderly conduct under Texas Penal Code section 42.01(a)(1) because of profane language he used in his conversation with Defendant. *Id.* After Plaintiff's arrest, Margaret informed Defendant that Amaris believed Plaintiff was going to kill her. *Id.*

Based on Defendant's interactions with Plaintiff, Margaret, and Amaris, Defendant had probable cause to arrest Plaintiff for disorderly conduct. Under section 42.01(a)(1), "[a] person commits an offense if he intentionally or knowingly: uses abusive, indecent, profane, or vulgar language in a public place, and the language by its very utterance tends to incite an immediate

breach of the peace." TEX. PENAL CODE § 42.01(a)(1). Defendant avers that Plaintiff used profane language when he approached Plaintiff. ECF No. 45-2, at 2. Furthermore, Defendant had reason to believe that Plaintiff's behavior and actions caused Amaris to fear for her and her mother's safety. *See id.* The facts and circumstances known to Defendant on July 3, 2019 provide a reasonable basis for Plaintiff's arrest for disorderly conduct. Given the evidence in the record, the Court cannot say there was no probable cause for Plaintiff's arrest on July 3, 2019.

As to the second incident, on September 27, 2019, Defendant was dispatched to 5103 St. Leonard for a disturbance. ECF No. 45-2, at 2. Defendant spoke with Lilianna Bonneau, Plaintiff's daughter, and she told Defendant that during an argument with her father, he took her dog, put it in his vehicle, and drove off. *Id.* Lilianna told Defendant that she owned and cared for the dog and that she did not give Plaintiff consent to take the dog. *Id.* Soon after their conversation, Defendant observed Plaintiff drive by the area, and Defendant pulled Plaintiff over. *Id.* Defendant saw a dog that matched the description Lilianna had provided in Plaintiff's back seat. *Id.* Lilianna was brought to the scene where she confirmed the dog was hers. *Id.* Plaintiff was then arrested for theft under section 31.03 of the Texas Penal Code.

Defendant had probable cause to arrest Plaintiff for theft based on his conversation with Lilianna and her subsequent identification of her dog. Under section 31.03, "[a] person commits an offense if he unlawfully appropriates property with intent to deprive the owner of property." Appropriation of property is unlawful if "it is without the owner's effective consent" TEX. PENAL CODE § 31.03(b)(1). Here, Defendant had spoken with Lilianna who informed him that Plaintiff took her dog without her effective consent. Defendant had Lilianna confirm that the dog found in Plaintiff's car was in fact hers prior to making an arrest for theft. Therefore, based on the facts

and circumstances known to Defendant at the time of arrest, Defendant had probable cause to arrest Plaintiff for theft on September 27, 2019.

Because Defendant had probable cause to arrest Plaintiff on both incidents, Defendant did not violate Plaintiff's constitutional rights. Thus, Defendant is entitled to qualified immunity, and the Court grants summary judgment as to Plaintiff's unlawful arrest claim.

### C. Plaintiff's equal protection claim fails because Plaintiff fails to present any evidence of intentional discrimination.

Plaintiff additionally asserts that Defendant arrested him because of his race in violation of the Equal Protection Clause. ECF No. 16. The Fourteenth Amendment prohibits a state from denying to any person within its jurisdiction the equal protection of the laws. *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 212 (5th Cir. 2009). "To state a claim under the Equal Protection Clause, a § 1983 plaintiff must allege that a state actor intentionally discriminated against the plaintiff because of membership in a protected class." *Williams v. Bramer*, 180 F.3d 699, 705 (5th Cir. 1999). In the equal protection context, discriminatory intent implies that the decisionmaker selected a particular course of action at least in part because of, and not simply in spite of, the adverse impact it would have on an identifiable group. *Woods v. Edwards*, 51 F.3d 577, 580 (5th Cir. 1995) (per curiam). Thus, a claimant must prove specific acts to support a claim of discrimination; the claimant's subjective belief that they were subject to discrimination is insufficient. *See id.*; *see also Kossie v. Crain*, 602 F. Supp. 2d 786, 792 (S.D. Tex. 2009); *Jones v. Zhabazz*, No. H-06-1119, 2007 WL 2873042, at *2 (S.D. Tex. Sept. 28, 2007).

Plaintiff alleges that Defendant "assumed he had committed a crime" and was arrested because of his race. ECF No. 16. In Plaintiff's deposition, he testified that Defendant called him "ignorant," and on September 27, 2019, said to Plaintiff: "There. We locked your handcuffs. We double-locked your handcuffs." Bonneau Dep. 130:15–21. Plaintiff additionally testified that

11

when he watched Defendant's bodycam footage, he heard Defendant state: "There. Now we can arrest him." *Id.* Plaintiff further testified that Defendant shined a flashlight in his face, refused to let him speak to his superior, and berated him. *Id.* at 130:22–131:18. Plaintiff felt "that officer [Cuellar] came in and, for whatever reason, formed an opinion about what I was trying to discipline my kids of, judge me, and arrested me." *Id.* at 136:16–23. When asked if this could have taken place regardless of race, Plaintiff responded "I don't know." *Id.* at 137:1–4.

Plaintiff has failed to present evidence that Defendant intentionally discriminated against him because of his race or that he received treatment different from similarly situated individuals. Defendant's statements do not demonstrate discriminatory intent. While Plaintiff may believe that Defendant's treatment of him was due to his race, without more, this is insufficient to support an equal protection claim. *See Wood*, 51 F.3d at 580. Because there is no evidence that Defendant intentionally discriminated against Plaintiff in violation of his rights under the Equal Protection Clause, Defendant is entitled to qualified immunity as to Plaintiff's equal protection claim.

### D. Plaintiff's claim for intentional infliction of emotional distress fails because it is predicated on the same facts as his constitutional claims.

Plaintiff alleges that Defendant intentionally subjected Plaintiff to emotional distress. ECF No. 16, at 4. In Texas, intentional infliction of emotional distress (IIED) is a "gap-filler" tort, "judicially created for the limited purpose of allowing recovery in those rare instances in which a defendant intentionally inflicts severe emotional distress in a manner so unusual that the victim has no other recognized theory of redress." *Hoffmann-La Roche Inc. v. Zeltwanger*, 144 S.W.3d 438, 447 (Tex. 2004). Recovery for IIED is "'to supplement existing forms of recovery by providing a cause of action for egregious conduct' that might otherwise go unremedied" and "should not be extended to circumvent the limitations placed on the recovery of mental anguish

damages under more established tort doctrines." *Id.* (quoting *Standard Fruit & Vegetable Co. v. Johnson*, 985 S.W.2d 62, 68 (Tex. 1998)). Thus, where the same facts form the basis of the plaintiff's IIED and statutory claim, recovery for IIED is precluded. *Id.*; *see also Holguin v. Lopez*, 584 F. Supp. 2d 921, 928 (W.D. Tex. 2008) (dismissing plaintiff's IIED claim because it was based on the same operative facts as plaintiff's constitutional claims); *Johnson v. Blue Cross/Blue Shield of Tex.*, 375 F. Supp. 2d 545, 549 (N.D. Tex. 2005) (dismissing plaintiff's IIED claim because the facts underlying the claim were identical to her Title VII claim).

Plaintiff's Complaint sets forth the same operative facts for his IIED claim as his constitutional claims. Plaintiff asserts that he "suffered damages due to the illegal arrest and conduct of the Defendant," specifically because Defendant arrested Plaintiff "with knowledge and without the probable cause necessary to effectuate an arrest." ECF No. 16, at 6. These allegations form the basis of Plaintiff's constitutional claims, discussed *supra*. Therefore, Plaintiff's IIED claim fails as a matter of law and the Court will grant summary judgment as to this claim.

### E. Plaintiff's false report claims fail because he has not identified any false statements made by Defendant.

Plaintiff additionally asserts that Defendant issued a citation pursuant to Texas Government Code section 411.187(b)[2] "without just cause" during the first incident, and filed a false police report with respect to the second incident that subjected him to the Bexar County justice system. ECF No. 16, at 6. "[T]here is no right to a completely accurate police report." *Smith v. Patri*, 99 F. App'x 497, 498 (5th Cir. 2004). However, the Fourth Amendment also

---

[2] Texas Government Code section 411.187(a) provides that a Texas handgun license must be suspended if the license holder is charged with a Class A or B misdemeanor or felony, fails to notify the Department of Public Safety (DPS) of a change or name or address, is the subject of a protective order, or is arrested for an offense involving family violence. Section 411.187(b) permits a law enforcement officer to submit an affidavit to DPS if the officer "believes a reason listed in Subsection(a) to suspend a license exists[.]" Thus, in addition to Plaintiff's failure to identify with specificity any false statement in Defendant's affidavit, the Court notes that Defendant had authority pursuant to the Texas Government Code to file such an affidavit.

protects against pretrial detention instituted pursuant to wrongful legal process. *Garcia v. San Antonio, Tex.,* 784 F. App'x 229, 232 (5th Cir. 2019). This includes the "constitutional right . . . to be free from police arrest without a good faith showing of probable cause" based on "deliberated or reckless false statements." *Winfrey v. Rogers,* 901 F.3d 483, 494 (5th Cir. 2018). Such a right is "clearly established" for purposes of qualified immunity. *Id.*

Because Plaintiff has failed to identify with specificity any false statements included in Defendant's reports of either incident, to DPS or in a police report, Plaintiff's due process claim fails. Even if Plaintiff could establish that Defendant's reports included a false statement "knowingly and intentionally, or with reckless disregard for the truth," Plaintiff's due process claim would still fail as a matter of law. Because the Court has concluded that the *undisputed* facts—all of which were contained in Defendant's reports—support a finding of probable cause as to both arrests, any allegedly false statements made in Defendant's reports cannot have been "necessary to the finding of probable cause." *See Manuel v. City of Joliet*, 137 S. Ct. 911, 918 (2017). Therefore, the Court grants summary judgment as to Plaintiff's false report claims.

### F. Plaintiff's Fifth Amendment claim fails because Defendant is not a federal officer.

Plaintiff further claims that Defendant violated his Fifth Amendment rights. ECF No. 16, at 1. However, the Fifth Amendment's protections only attach when the federal government seeks to deny a liberty or property interest. *Knoetze v. U.S. Dep't of State*, 634 F.2d 207, 211 (5th Cir. Unit B Jan. 1981). Because Defendant is not a federal officer, the Court grants summary judgment as to Plaintiff's Fifth Amendment claim.

## CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment (ECF No. 45) is **GRANTED**. The Clerk is directed to enter judgment in favor of Defendant and against Plaintiff.

Plaintiff shall take nothing by his claims and his claims are **DISMISSED WITH PREJUDICE**.

It is so **ORDERED**.

**SIGNED** this 13th day of October, 2021.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE